**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Case No. 14-cv-01200-RM

IN RE: ROBERT CHARLES CAIN, Debtor.

MEDICAL LIEN MANAGEMENT, INC.,

    Plaintiff-Appellant,

v.

ROBERT CHARLES CAIN,

    Defendant-Appellee.

---

**ORDER**

---

Before the Court is the Appellant Medical Lien Management, Inc.'s ("Appellant" or "MLM") Notice of Appeal filed April 29, 2014. (ECF No. 2.) MLM appeals a judgment entered May 30, 2014 by the United States Bankruptcy Court for the District of Colorado in an adversary proceeding in the Appellee Robert Charles Cain's ("Appellee" or "Cain") Chapter 7 bankruptcy case. Appellant has produced the bankruptcy court's record (ECF No. 8) and the matter has been briefed to the extent permitted by the rules. For the reasons that follow, the Court REVERSES the Bankruptcy Court's order and REMANDS for further proceedings consistent with this order.

1

I.   BACKGROUND

Appellee Cain, now a former attorney in the State of Colorado, previously represented two persons – Clarence Martin and Sheila Tyler – who were involved in an automobile accident in February 2009. Martin and Tyler apparently lacked medical insurance and, after the accident, contracted with Appellant MLM to pay medical expenses in exchange for liens on any monetary recovery they may receive from their personal injury actions involving the accident. MLM paid a total of $310 for Martin's medical care and a total of $4,387.75 for Tyler's medical care.

Cain assisted Martin and Tyler in achieving settlement of their personal injury claims in or about September 2009. MLM was a co-payee on the settlement checks and endorsed the checks with Cain's promise that he would pay the total sums for Martin's and Tyler's medical care liens. Cain deposited the settlement funds into his law firm's trust account, then distributed funds to Martin, Tyler and himself, but paid nothing to MLM.

Allegedly, without MLM's knowledge, Cain filed for Chapter 7 bankruptcy in October 2009 and did not list MLM as a creditor on his schedules.[1] On January 26, 2010, the bankruptcy court issued an order granting Cain a discharge. The bankruptcy case was closed March 11, 2010.

Meanwhile, MLM contacted Cain several times between September 2009 and June 2011 regarding the status of payment of the liens. Cain told MLM that the legal actions were still pending and no final settlement had taken place. Allegedly, Cain never mentioned anything

---

[1] MLM's allegations also include information that Cain has been suspended, then disbarred from the practice of law, allegedly for mishandling client funds.

about his bankruptcy proceeding to MLM. MLM finally sent the matter to its attorney for collection.

      **A.**     **State Court Case**

After Cain failed to respond to a final demand for payment in December 2011, MLM filed a complaint alleging breach of contract and conversion against Cain in Denver District Court in January 2012. In March 2012, Cain filed a Notice of Bankruptcy Filing in the action; this was the first time MLM had notice of the bankruptcy proceeding. However, Denver District Judge Bronfin determined that Cain failed to demonstrate that MLM's claims were discharged and/or stayed in the bankruptcy case, so the civil case proceeded.

On November 27, 2012, Judge Bronfin granted MLM's motion for summary judgment and entered judgment in MLM's favor on both of its claims against Cain in the amount of $4,697.75 plus costs and statutory interest. Notably, the judge found Cain "personally liable on the conversion claim."

      **B.**     **Bankruptcy Case**

When MLM attempted to execute on its judgment against Cain, Cain filed a motion for sanctions in the United States Bankruptcy Court for the District of Colorado alleging MLM had violated the bankruptcy discharge injunction pursuant to 11 U.S.C. § 524. Following briefing and a hearing on the motion, Bankruptcy Judge Brown denied the motion and ordered MLM to file an adversary proceeding to determine the dischargeability of its claim against Cain.

Accordingly, on June 13, 2013, MLM filed a Complaint to Determine Dischargeability of Debt against Cain. MLM alleged that Cain willfully and maliciously breached the lien agreements and converted $4,697.75 of the settlement funds belonging to MLM. MLM sought a

declaration that, due to Cain's conduct, the $4,697.75 was not discharged in the bankruptcy proceeding pursuant to 11 U.S.C. §§ 523(a)(6) and 523(a)(3)(B). Cain answered the complaint denying all allegations.

MLM filed a motion for summary judgment on November 6, 2013 arguing that its debt was unscheduled, unlisted and it was unaware of the bankruptcy in time to file a request for determination of dischargeability of the debt pursuant to § 523(a)(3)(B). In addition, MLM argued that Cain intended for the conversion of the debt to injure MLM or MLM's lien interest pursuant to § 523(a)(6). MLM contended that its failure to raise the issue of "intent" in the state court action did not preclude it from raising the issue at the bankruptcy court, since it was unnecessary to prove "intent" for a conversion claim. Cain countered that MLM knew about the bankruptcy action before it filed a complaint in state court and, thus, failed to follow the order in that court to initiate an adversarial proceeding in bankruptcy court; accordingly, MLM should not be allowed to seek a determination of dischargeability at such a late date. On February 3, 2014, Judge Brown denied the motion for summary judgment for reasons stated at a hearing (no transcript provided), and set the matter for trial.

On April 14, 2014, Judge Brown held a trial on the issue "whether Debtor acted with the requisite intent to establish a claim under 11 U.S.C. § 523(a)(6)." After receiving the proffered exhibits and taking testimony from MLM's representative and from Cain, Judge Brown first ruled that she would incorporate the factual findings made by Judge Bronfin on summary judgment. (ECF No. 8-2 at 72.) Further, the judge did not find credible Cain's testimony that he was justified in not paying the lien because he disagreed with the approval of an MRI ordered for Sheila Tyler and that he disbursed the settlement proceeds believing he would soon have other

4

funds to pay MLM though pursuing uninsured motorist claims. (*Id.* at 73-74.) However, Judge Brown determined that Cain's lack of truthfulness did not equate to willful and malicious conversion of the funds, and that he likely forgot about the liens or failed to check on their pending status; such conduct amounts only to negligence, carelessness or even recklessness, but does not rise to the level necessary to prove a claim under § 523(a)(6): "I cannot say based on the facts presented today that [Cain] acted with intent to injure MLM or that he held a subjective belie[f] at the time he disbursed these funds that MLM was substantially certain to be injured by his actions." (ECF No. 8-2 at 80.)

      **C.**     **Issue on Appeal**

MLM states the sole issue on appeal as: "[w]hether the Bankruptcy Court erred as a matter of law in concluding that Medical Lien Management, Inc. failed to establish that Defendant-Appellee Robert Cain willfully and maliciously converted its property pursuant to 11 U.S.C. § 523(a)(6) and finding the debt Cain owes to MLM for this tortious conduct dischargeable in bankruptcy."

**II.**    **STANDARD OF REVIEW**

The Court has appellate jurisdiction to review final orders and judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), (c)(1)(A). The Court reviews the bankruptcy court's legal conclusions *de novo* and its underlying factual findings for clear error. *In re Paige*, 685 F.3d 1160, 1178 (10th Cir. 2012). The Court reviews *de novo* mixed questions consisting primarily of legal conclusions drawn from the facts. *In re Rafter Seven Ranches L.P.*, 546 F.3d 1194, 1200 (10th Cir. 2008) (internal quotation and citation omitted). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate

court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *In re Sanders*, 210 F.3d 390, 2000 WL 328136, at *2 (10th Cir. 2000) (quoting *Southern Colo. MRI, Ltd. v. Med-Alliance, Inc.*, 166 F.3d 1094, 1099 (10th Cir. 1999)).

**III.   ANALYSIS**

This case presents a mixed question of law and facts.

Section 523(a)(6) of the Bankruptcy Code provides:

> "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> . . .
> "(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

11 U.S.C. § 523(a)(6).  "The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis removed).  The Supreme Court in *Geiger* noted the similarity between the statute and an "intentional" tort, as distinguished from a negligent or reckless tort saying, "[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* at 61-62 (emphasis removed).  The Supreme Court concluded, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.*

Interpreting *Geiger*, the Tenth Circuit has found, "both the Restatement test and the quoted formulation articulated by the Supreme Court require courts 'to focus on the subjective intent of the debtor to determine whether the injury was intended or unintended.'" *In re Englehart*, 229 F.3d 1163, 2000 WL 1275614, at *2 (10th Cir. Sept. 8, 2000) (unpublished) (citation omitted).  Accordingly, the Tenth Circuit concluded, "the 'willful and malicious injury'

exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When injury was 'neither desired nor in fact anticipated by the debtor,' it is outside the scope of the statute." *Id.* at *3 (citing *Geiger*, 523 U.S. at 62).

"Willful injury can be established by 'evidence of both the debtor's knowledge of the creditor's ... rights and the debtor's knowledge that the conduct will cause particularized injury.'" *In re Schrader*, No. 12-cv-01961-RBJ, 2013 WL 561469, at *4 (D. Colo. Feb. 14, 2013) (quoting *In re Tinkler*, 311 B.R. 869, 879 (Bankr. D. Colo. 2004)).

Here, Judge Brown, interpreting *Geiger*, found that to constitute a "willful and malicious injury" pursuant to § 523(a)(6), "the Debtor must will or desire harm or believe that injury is substantially certain to occur as a result of the Debtor's behavior." (ECF No. 8-2 at 77.) She followed, "[t]he Debtor must have a subjective belief that his actions were substantially certain to injure the creditor. It's not even enough to show that a reasonable person would have known it was substantially certain to occur. This Debtor must have held the subjective belief that it would." (*Id.*)

Judge Brown cited examples of acts of conversion that give rise to Section 523(a)(6) claims: "the homeowner who has been foreclosed and then strips the home of every fixture just to stick it to the mortgage lender, or the debtor who is having valuable equipment or vehicles repossessed and agrees to surrender them but instead drops them off in a high crime area knowing they will be cannibalized by neighborhood residents before the bank can retrieve them." (*Id.* at 75.) With respect to this case, the judge noted, "[w]hen I step back and look at this case as a whole, I ask myself why would the Debtor act to intentionally hurt MLM[?] I could see if he

7

had gotten into a dispute with MLM about these services before disbursing the proceeds. ... but that's not the sequence of events here." (*Id.* at 74.)

MLM timely filed a notice of appeal and opening brief in this case. Although provided the opportunity to do so, Cain did not respond. MLM argues that "the Bankruptcy Court's legal conclusion that Cain acted negligently or recklessly but not willfully in light of its own factual findings and those of the state court constitutes an error as a matter of law." (ECF No. 11 at 7.) MLM cites *In re Gordon*, 303 B.R. 645, 656 (Bankr. D. Colo. 2003) for its proposition: "a creditor is not required to show that a debtor has to actually wish to harm the creditor to show willful and malicious conduct. It is sufficient for the creditor to establish that the debtor subjectively believed that injury to the creditor was substantially certain to occur as a result of his actions." (ECF No. 11 at 18.) To support the application of this proposition to the case, MLM points to the following facts:

- Cain was aware of MLM's lien rights in the settlement funds when he requested endorsement of the settlement checks from MLM, then three days later disbursed the funds to Martin, Tyler and himself; and

- Cain had expressly agreed, by executing the Lien Agreements, to "distribute funds directly to MLM for such sums outstanding and subject to [MLM's] lien."

(*Id*. at 18-19.)

At this point, the Court agrees with Judge Brown that these facts alone establish a conversion without necessarily demonstrating willfulness or malice. In accordance with prevailing law, Judge Brown is correct that the Court must look at *Cain's* subjective intent (a wish to cause injury or at least a belief it was substantially certain to occur) to determine whether the conversion was willful or malicious.

In looking at Cain's "state of mind," Judge Brown noted that she did not accept as true Cain's testimony concerning an alleged dispute of medical services his client, Tyler, received. She then stated, "just because I don't find the Debtor to be truthful does not necessarily mean that MLM has proven that he acted with willful and malicious intent to injure MLM's lien rights. When I step back and I look at this case as a whole, I ask myself why would the Debtor act to intentionally hurt MLM[?]"  (ECF No. 8-2 at 74.)  Judge Brown answered her question, "I think the Debtor screwed up and forgot about MLM's liens or he forgot to have his staff call MLM to check on the amount of medical services." (*Id.* at 75.)

The Court finds two errors in this reasoning.  First, in asking the question, Judge Brown focused solely on a "wish to cause injury," but failed to consider whether Cain held a subjective belief that injury was substantially certain to occur.  For example, the evidence revealed that Cain was an attorney who had represented clients in "hundreds" of personal injury cases over the course of his career and had experience working with MLM and other such businesses on several occasions; however, Judge Brown did not mention these facts in her analysis.  Further, Judge Brown did not consider the fact that a month following the disbursement, Cain filed for Chapter 7 bankruptcy and did not inform MLM until well after the bankruptcy case was closed. Moreover, in finding Cain's testimony not credible concerning the "medical services dispute," Judge Brown accepted the fact that "on numerous occasions after [Cain disbursed the funds], MLM inquired about the receipt of its share of the proceeds and no mention was made as to either the appropriateness or the cost of the services."  (ECF No. 8-2 at 73-74.)  MLM argues that during these "numerous" conversations, Cain told MLM that the personal injury cases remained pending, which was not true.  Cain did not dispute this fact during the state and

9

bankruptcy proceedings, but rather claimed that he disputed Tyler's approved medical services and attempted to negotiate with MLM a reduction in the lien without success. Judge Brown does not mention Cain's continued contacts with MLM and verbal attempts to evade payment of the liens. The Court finds this evidence, in addition to Cain's conversion of the settlement funds, should be considered in determining whether Cain held a subjective belief that financial injury to MLM was substantially certain to occur if he failed to pay the liens.

Second, although there was no evidence proffered concerning Cain's forgetfulness or any mistake in the conversion of the settlement funds, Judge Brown concluded Cain was negligent or even reckless in either forgetting about the liens or making a mistake in converting the settlement funds. (ECF No. 8-2 at 75; *see also id.* at 75-76 ("sometimes the right hand does not know what the left hand is doing and so these [invoices] may have gone into [Cain's] file but he may have had no conscious awareness of the bills when he struck his settlement and/or when he disbursed the funds.").) Judge Brown likened the facts of this case to those in *In re Englehart*, in which the debtor endorsed and deposited insurance checks for her husband's medical bills, then spent the proceeds other than on the medical bills. Judge Brown cited *Englehart*'s language, "[t]here is simply no evidence of the Debtor's state of mind at the time she endorsed and deposited the checks," and stated "so the Debtor took checks clearly intended for another purpose, converted them to her own use but nevertheless it did not amount to a Section 523(a)(6) claim." (ECF No. 8-2 at 80.)

MLM argues that Judge Brown's application of *Englehart* to this case is improper in that the facts are distinguishable:

> The debtor in *Englehart* had only minimal education beyond high school and no special knowledge of the health care insurance system. She had absolutely no

> understanding that she was supposed to use the insurance funds to pay the hospital. She saw no bank statements, explanation of benefit forms, or notices that the funds were to be paid to the hospital. Her husband used cocaine and may have forged her signature on the checks as he had done in the past. The insurance company actually did issue some payments for the medical bills directly to the medical provider while other benefits were mailed directly to the debtor. In short, the debtor in *Englehart* was not aware of the medical provider's right to be paid from the insurance proceeds and could not have intended to injure the medical provider.

(ECF No. 11 at 23-24.) The Court agrees that the debtor in *Englehart* did not have the same knowledge and experience as Cain with respect to the converted funds, and that such differences must be considered here, particularly in the evaluation as to Cain's belief that injury would be substantially certain to occur.

MLM argues that the circumstances of this case are more similar to those in *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916), which was cited by Judge Brown but not necessarily applied. Rather, Judge Brown noted her impression from *McIntyre* was "that the immediate sale [of pledged stock] was a significant fact in the Court's determination that this was a willful and malicious act." (ECF No. 8-2 at 78.) MLM contends that Judge Brown failed to apply the same impression to this case in which Cain converted the settlement proceeds in only three days. This Court agrees that Judge Brown failed to explain how her "impression" from *McIntyre* did or did not apply to the facts of this case and whether the case supports her decision.

In sum, this Court must conclude that Judge Brown's analysis was incomplete. A critical element in evaluating whether the conversion was willful and malicious, *i.e.*, Cain's subjective belief that MLM's financial injury was substantially certain to occur, does not appear from the record to have been considered. Accordingly, the Court will remand the matter to the

bankruptcy court for further consideration and application of the facts to this missing element of the law.

## IV.    CONCLUSION

Based on the foregoing, the Court:

(1)    REVERSES the bankruptcy court's order;

(2)    REMANDS the matter to the United States Bankruptcy Court for the District of Colorado for further proceedings consistent with this opinion.

DATED this 12th day of November, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge